UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANGELICA BORROMEO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 04 C 4078 |
| THE CITY OF CHICAGO, a municipal corporation; JOHN ROBERSON, individually; and MICHELLE KANTOR, individually, | ) | Judge John W. Darrah |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Angelica Borromeo, filed suit against Defendants, the City of Chicago, John Roberson, and Michelle Kantor. Plaintiff brings claims for: (1) sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* (Count I); (2) race discrimination under Title VII (Count II); (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count III); (4) sex discrimination under 42 U.S.C. § 1983 (Count IV); (5) race discrimination under 42 U.S.C. § 1983 (Count V); and (6) race discrimination under 42 U.S.C. § 1981 (Count VI).

Presently before the Court is Defendants' Motion to Dismiss in Part Plaintiff's First Amended Complaint; Defendants seek to dismiss the allegations pertaining to: (1) failure to select Plaintiff for other positions, (2) false disciplinary charges, and (3) discrimination which allegedly occurred after the original act of discrimination. While this motion was pending, Plaintiff filed a Second Amended Complaint. Per the parties' agreement, this motion was deemed to be refiled as to the Second Amended Complaint.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiff's Second Amended Complaint. Plaintiff, an Asian-American, is employed as an architect for the City of Chicago (the "City") in the Permits Bureau of the Department of Buildings, located within City Hall in downtown Chicago. Her assignments included architectural and certification work on major products, including construction at Chicago's O'Hare and Midway Airports, various City libraries, and other multi-million-dollar construction projects.

The City formed a new department, the Department of Construction and Permits ("DCAP"), in a reorganization. After the reorganization, Plaintiff was transferred from her City Hall position to another facility. While Plaintiff had previously worked on products involving her architectural and other professional skills, her new position was largely secretarial and

2

clerical in nature. As a result of her transfer, Plaintiff also lost opportunities for overtime pay, and her new office conditions were significantly inferior to the office conditions at City Hall. Plaintiff also lost opportunities for promotions and career advancement. At the time Plaintiff was transferred, seven other employees with similar qualifications as Plaintiff worked for DCAP. Only Plaintiff and another older female were transferred to less desirable positions, while younger, male, non-Asian architects in Plaintiff's department were assigned to more desirable positions.

After her demotion, Plaintiff filed a grievance with her union against the City. The City agreed to consider Plaintiff for the next applicable vacancy at City Hall. However, the City has not considered or hired Plaintiff for such vacancies, choosing instead to hire younger, male, non-Asian employees. The City has also retaliated against Plaintiff by bringing false, baseless disciplinary charges against her.

Plaintiff's first Equal Employment Opportunity Commission ("EEOC") charge contends that Plaintiff was discriminated on account of her race, sex, and age and states that:

> I was hired by [Defendants] in or around August 1992. My current position is Architect IV. On or about April 30, 2003, I was transferred to a less favorable location. None of the male or white employees were transferred. My duties were given to younger male employees.
>
> I believe I have been discriminated against because of my race, Asian, and my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been discriminated against because of my age, 50 (DOB: 07/21/1952), in violation of the Age Discrimination in Employment Act of 1967.

An intake questionnaire filled out by Plaintiff, also signed under the penalty of perjury, alleges that Defendants failed to promote Plaintiff on account of her sex, age, and national origin. The questionnaire then refers to an attached letter, which provides, in pertinent part:

3

7. March 10, 2003 DCAP selection. Yemi told by the commissioner that he will be the he will [sic] work with Jim Jack in self-cert (not known by myself at that time), in the close door meeting with John Roberson. This is a formal selection since Yemi was hired only a few months ago and he was already told where he job assignment is [sic].

8. March 11, 2003 [sic] the older and female employees were the last to be told by Michelle Kantor that we will be with DCAP. She is not in liberty to tell what our [d]uties are for three months we will be assigned to finishing the projects about 3,000 plan outstanding [sic]. After that time she will tell us what our duties will be. (very tricky).

9. March 17, 2003 Monday unofficial move to the 9th floor new department (newly renovated). New hire started coming in and working. Brad (white male and young) is working with Jimmy Jack in Self-Certification. Victor Martinez (younger male Hispanic) promoted to Project Manager. . . .

13. April 4, 2003 Chuck Killman informed us that we will be with DCAP and the commissioner wants to talk to us regarding our duties.

14. April 8, 2003 Roberson talked to us on the 9th floor. We complained to him that we [w]ere mistreated all through this process. He told us he would look into it. **We also asked him why we were not selected for promotion in the new department.** His respond [sic] was I only wanted less experience people that would adapt to his system. He wants fresh ideas. He went on to give us the new DCAP brochure with the floor plan of the 9th. He offered us the job of Self-Cert, Plan examination, regulatory examination and neighborhood center (this center was never our job). I told him that I was very involved with self-cert and I would like to stay in that position. He said he would talk to us again. . . .

16. April 11, 2003 (I was scheduled to see the commissioner alone at 1 pm). At 9 am, there was construction at the 8th floor that prevented us from doing our work. We had to wear a masked [sic]. The bathroom about 4 feet from the office was undergoing construction.

My meeting with the commissioner was moved to 3 pm. In the meeting the commissioner had already made up his mind that he will assign me to Kedzie and 47th St. I had told him it will be hardship [sic] for me since I am a single parent and my home is close to O'Hare airport and that was not the job that I was doing for the last 10 years. I was in Self-Cert and I was good at my job. **He told me there would be no architectural and I would be over-qualified for the job.** . . .

4

22. April 30, 2003 I was given a letter stating that I will be assigned to Addison Neighborhood office not in Self Cert.

Pl.'s Second Am. Compl., Ex. 2 (emphasis added).

Paragraphs 7 through 9 of Plaintiff's third EEOC charge provide:

7. However, since engaging in protected activity, Respondent has engaged in harassing and retaliatory conduct for the purpose of manufacturing a false reason to discipline me and justify its discriminatory and retaliatory actions.

8. For example, on or about October 28, 2004, I was issued a written reprimand for supposedly being discourteous to a City customer. Respondent caused its agents to solicit the complaint from the customer for the purpose of manufacturing disciplinary action against me.

9. On or about October 22, 2004, I was notified that I faced further formal disciplinary action supposedly related to my competence to perform my job duties and other, unspecified matters.

## ANALYSIS

Defendants do not seek to dismiss any particular claims but, rather, only to dismiss allegations pertaining to: (1) failure to select Plaintiff for architectural positions at City Hall, (2) false disciplinary charges, and (3) Defendants' failure to return Plaintiff to City Hall after she was transferred. Defendants do not dispute that Plaintiff's allegations concerning her transfer to the Addison facility are properly pled.

Defendants argue that Plaintiff's allegations regarding her failure to be selected for other positions – specifically, architectural positions at DCAP – were not contained in any of Plaintiff's three EEOC charges. Plaintiff argues that the allegations are within the scope of her first EEOC charge, through supporting documents – specifically, that the allegations were

included in her intake questionnaire and statement attached thereto. Defendants contend that these documents may not be considered and that, even if the documents were considered, do not support the specific failure-to-promote claim made in the charge.

Title VII and ADEA plaintiffs must initially file a charge with the EEOC before pursuing a claim in federal court; and, thus, Title VII and ADEA claims cannot be brought if they were not included in the plaintiff's EEOC charge. *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (*Vela*); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). In *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) (*Novitsky*), the court held that "it is the charge rather than the questionnaire that matters." However, in a later case, the Seventh Circuit recognized that "[t]here are cases where courts have looked beyond the four corners of the EEOC charge form," provided that, at a minimum, "it is clear that the charging party intended the [EEOC] to investigate the allegations" and the allegations are made pursuant to oath or affirmation. *Vela*, 218 F.3d at 664-65 (7th Cir. 2000) (citation omitted). A concurring opinion in *Novitsky* also stated that equitable reasons may exist that warrant consideration of the intake questionnaire. *Novitsky*, 196 F.3d at 703.

Plaintiff's intake questionnaire, signed under the penalty of perjury, states that she was denied a promotion. The intake questionnaire refers to an attached statement which includes details regarding Plaintiff's denied promotion. Therefore, for purposes of a motion to dismiss, Plaintiff's intake questionnaire and attached statement are sufficient to support her failure-to-promote charge.

Defendants contend that even if the statement is considered, it lacks the specificity required under *McGoffney v. Vigo County Division of Family & Children, Family & Social Services Adminstration*, 389 F.3d 750, 752 (7th Cir. 2004) (*McGoffney*). As discussed above, a plaintiff must file a charge with the EEOC before pursuing a Title VII or ADEA claim in federal court. An exception to this general rule, which allows a claim not included in the EEOC complaint to be pursued in federal court, exists when that subsequent claim is "reasonably related" to the claim that was included in the EEOC charge. *Vela*, 218 F.3d at 664 (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (*Cheek*)). To be reasonably related, a factual relationship must exist between both claims; specifically, a claim in a plaintiff's complaint and an EEOC charge are reasonably related when the subsequent claim can be reasonably expected to be developed from an investigation of the allegations in the EEOC charge. *Cheek*, 31 F.3d at 500; *Egan v. Palos Community Hospital*, 889 F.Supp. 331, 337 (N.D. Ill. 1995) (referring to ADEA claims).

> In *McGoffney*, the Seventh Circuit further explained this requirement:
>
> As we have previously explained, limiting a Title VII plaintiff to claims included in her EEOC charge 'serves the dual purpose of affording the EEOC and the employer the opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved.' *Cheek v. W & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). [Plaintiff's] vague allegations regarding 'positions' and 'jobs' for which she applied were insufficient to place the EEOC or [Defendant] on notice of the particular job applications to which she was referring. She made no mention of a specific employment action occurring any time within the year 1999, nor did she mention the individuals involved or provide specific facts that would indicate that she was referring to her fourth job application, submitted in October 1999.

*McGoffney*, 389 F.3d at 752.

7

Plaintiff's statement alleges that she was denied a promotion in the new department. The statement further alleges that Plaintiff was denied architectural work at DCAP. Therefore, Plaintiff's first EEOC charge was sufficient to place Defendants on notice of the allegations that Defendants failed to select Plaintiff for architectural positions with DCAP.

Defendants next argue that Plaintiff failed to include in her EEOC charges that she was falsely disciplined. However, Plaintiff's third EEOC charge adequately includes these allegations. Defendants, in their reply, do not argue to the contrary.

Finally, Defendants seek to dismiss any allegations contending Plaintiff was not returned to City Hall after she was transferred, as "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Sharp v. United Airlines*, 236 F.3d 368, 373 (7th Cir. 2001) (quotation omitted). Plaintiff contends that her allegations contain a fresh act of discrimination in that Defendants failed to consider Plaintiff for positions for which she was qualified while similarly-situated employees outside her protected class were treated more favorably. Plaintiff has pled a fresh act of discrimination; proof will be considered later.

For the first time in their reply, Defendants argue that Plaintiff's second EEOC charge does not contain this allegation; this argument will not now be considered.

## CONCLUSION

Based on the above, Defendants' motion to dismiss is denied.

Dated: May 18, 2005

JOHN W. DARRAH
United States District Judge

8